UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC COAST FEATHER COMPANY, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE OHIO MATTRESS COMPANY LICENSING AND COMPONENTS GROUP, a Delaware corporation, SEALY TECHNOLOGY, LLC, a North Carolina corporation, and DOWN-LITE INTERNATIONAL, INC., an Ohio corporation,<br><br>Defendants. | CASE NO. C12-1501MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND CAUSE OF ACTION |

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's second cause of action for intentional interference with business relations. (Dkt. No. 33.) Having reviewed the motion, Plaintiff's response (Dkt. No. 43), Defendants' reply (Dkt. No. 64), and the remaining record, the Court GRANTS Defendants' motion and DISMISSES Plaintiff's second cause of action with prejudice.

**Background**

This dispute arises out of the termination of the licensing agreement for Plaintiff Pacific Coast Feather Company ("PCFC") to manufacture and sell Sealy-branded bedding products. (Dkt. No. 4 at 4.) PCFC has been the exclusive licensee of Sealy's "top of bed products" for nearly fifteen years, pursuant to a licensing agreement and two extension agreements. (Id.) The current iteration of the agreement expires on March 31, 2013, and Sealy has elected not to renew PCFC's license. (Id. at 6.)

The licensing agreement grants PCFC the exclusive right to use Sealy trademarks during the license term and prohibits Sealy from granting licenses to other entities that relate to manufacture, sale, promotion, marketing, or distribution of bedding products until after March 31, 2013. (Dkt. No. 43 at 2.) The agreement also prohibits Sealy from using its trademarks to market, promote, distribute, or sell any bedding products. (Id.)

Plaintiff PCFC alleges that, in May 2012, ten months before the expiration of the license agreement, Sealy issued a press release announcing it had entered into new license agreements with two different companies, Down-lite and American Textile Company, to manufacture and market Sealy top of bed products. (Dkt. No. 4 at 7.) Plaintiff alleges that, contrary to the agreement, "Sealy has been actively working with Down-lite and American Textile Company to communicate and meet with current PCFC customers to market, promote and seek contracts for Down-lite's and American Textile Company's new Sealy-branded products." (Id. at 12.) Plaintiff does not allege that Defendants have executed or plan to execute any actual sales before PCFC's license terminates on March 31, 2013. (Id.)

Plaintiff PCFC brings four causes of action against Defendants: (1) breach of contract, (2) intentional interference with business relations, (3) intentional interference with contractual

advantage, and (4) unjust enrichment. (Id. at 11-14.) In the present motion, Defendants ask the Court to dismiss the second cause of action because "PCFC has no valid business expectancy in continued sales of Sealy-branded products under the License Agreement, in future sales to existing customers, or in customer placements as 'goodwill' under the terms of the License Agreement." (Dkt. No. 33 at 2.) Plaintiff counters that Defendants have intentionally interfered with their business relations because they have "interfere[ed] both with PCFC's ability to maximize its sales of Sealy-branded bedding products to its customers during the remainder of the License Agreement, and with PCFC's ability to leverage its contractual right to increase its sales of non-Sealy PCFC products to existing customers. (Dkt. No. 43 at 2.)

## Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a district court must dismiss a complaint if it fails to state a claim upon which relief may be granted. In considering a motion to dismiss, a court must accept a plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pleading that contains mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Sealy license agreement provides that it "shall be construed in accordance with the laws of the State of Ohio, U.S.A." (Dkt. No. 17 at 23.) Under Ohio law, the elements of a claim for tortious interference with contract are: (1) the existence of a contract or business relationship,

(2) the wrongdoer's knowledge of the contract or relationship, (3) the defendant interfered with the contract or relationship, (4) the lack of justification, and (5) resulting damages. Fred Seigel Co., L.P.A. v. Arter & Hadden, 85 Ohio St. 3d 171, 176 (1999).[1] To prove that interference was unjustified the plaintiff must demonstrate that the defendant's interference with another's contract was improper. Id.

### B. Valid Business Relationship

Plaintiff's complaint fails to state a claim for tortious interference with contract because it fails to sufficiently allege that PCFC has any valid business relationship that Defendants are interfering with. In its opposition to the present motion, Plaintiff argues that Defendants have interfered with two kinds of business expectancies: (1) PCFC's expectancy in sales of Sealy-branded products through the end of the term of the license agreement, including sales of remaining inventory during the 120 days after the term; and (2) PCFC's expectancy in the business relationships and goodwill forged by PCFC with its existing customers during the term of the Sealy contract. (Dkt. No. 43 at 4-5.) Plaintiff fails to allege facts sufficient to plausibly show the first expectancy is violated, and the license agreement makes clear that Plaintiff has no valid expectancy in the second relationship.

#### 1. Expectancy in Sales of Sealy-Branded Products Through End of Contract Term

Plaintiff fails to plausibly allege that Defendants have interfered with their business expectancy regarding sales of Sealy-branded products through the end of the license agreement or the 120-day period following the end of the license agreement. The license agreement provides Plaintiff with "the exclusive right to use the [Sealy] Trademarks on Bedding Products to

---

[1] Plaintiff and Defendants also cite Washington law on tortious interference with contract, but there does not appear to be any substantive difference between Washington and Ohio law on this issue. See, e.g., Leingang v. Pierce Cnty. Med. Bureau, Inc., 131 Wn/2d 133, 157 (1997).

be manufactured, promoted, marketed or sold by Licensee in the Territory" during the term, as well as the right to sell any remaining inventory for 120 days thereafter. (Dkt. No. 17 at 4-8.) Plaintiff alleges that "Sealy has interfered [with this expectancy] through its agreements with Down-lite and others, its ongoing promotion, marketing and sales efforts with Down-lite and others, and its agreements with, and efforts to sell, Comfort Revolution products in direct competition with PCFC both during and after the term." (Dkt. No. 43 at 5.) Specifically, Plaintiff allege that, "[r]egardless of whether products will not ship until April 1, 2013, Sealy's marketing and promoting have compromised PCFC's expectancy and deflected business away from PCFC by sending the message to customers that PCFC is 'out,' and the new licensees are 'in.'" (Id. at 6.)

But PCFC fails to allege any way that Defendants' activities—directed at delivering products after the contract term ends on March 31, 2013—have hindered PCFC's ability to sell products now. Plaintiff asserts that Sealy and its licensees are seeking contracts for sale, but does not allege that any sales have actually taken place before the end of the contract term. (Dkt. No. 43 at 6.) Plaintiff also does not describe how its current sales have been negatively impacted. (Id.) Plaintiff states that Sealy's actions planning for the transition after the current contract term ends have "undermined PCFC's ability to maximize its sales and other benefits from its customer relationships." (Dkt. No. 4 at 12.) But Plaintiff does not dispute Defendants' assertion that Defendants have gone out of their way to clarify at every turn that Sealy-branded products will not be available from Down-Lite until April 1, 2013. (Dkt. No. 64 at 4.) Without some description of how negotiations over future licenses have interfered with present sales, Plaintiff fails to plausibly allege that Defendants' have interfered with any business expectancy. See Twombly, 550 U.S. 544, 570.

Plaintiff's claim for tortious interference also relies on an unreasonable reading of the contract. (Dkt. No. 43 at 5-6.) Accepting Plaintiff's literal interpretation of Art. 2 of the license agreement would create a punitive dormant period, under which Sealy must refrain from any preparations for future license agreements until the current term expires. (Id.) Art. 2 of the license agreement states that Sealy will not "commencing on the date hereof . . . enter into an agreement to grant any Person, by any right or license to use the Trademarks or any other Sealy trademarks or trade dress in connection with the manufacture or sale, promotion, marketing or distribution of Bedding Products in the Territory . . . ." (Id. at 5.) Plaintiff's interpretation of art. 2 would result in Sealy's sales being dormant for the entire period it would take to establish a relationship with a new licensee. Imposing this unwritten dormant period would contradict a fundamental purpose of the agreement, which is to promote Sealy-branded products. (Id. at 4-8.)

A fundamental principle of Ohio law is that a "contract under consideration should be construed reasonably, so as not to arrive at absurd results." Cincinnati v. Cameron, 33 Ohio St. 336, 264 (1878). The more reasonable reading of art. 2 is its provisions do not cover preparations for future license agreements, as long as no sales occur before the term ends. While the specific contract provision is ambiguous, its meaning in the context of the broader contract is not. Because Defendants actions of negotiating an agreement to take effect after the current term expires do not violate the license agreement, Defendants alleged actions are not improper.

  2. Expectancy in Business Relationships and Goodwill After Contract Term

Plaintiff next alleges that Sealy is interfering with PCFC's valid expectancies and goodwill from existing customer relationships, which will impact its "ability to transition customers and sell other PCFC bedding products after the expiration of the agreement." (Dkt. No. 43 at 6-7.) This argument fails because the licensing agreement at issue prohibits PCFC from

directly working to "transition" customers from Sealy products to PCFC products. (Dkt. No. 64 at 5.) Art. 14 of the license agreement obliges PCFC to "use commercially reasonable efforts to . . . meet, enhance, develop and expand the demand for Sealy Products in the Territory." (Dkt. No. 17 at 18-19.) Art. 9 of the agreement prevents PCFC, during the term of the agreement, from identifying itself as Sealy's licensee or "attempt[ing] to refer to its affiliation with Sealy in the manufacture or sales of any products other than Sealy Products." (Id. at 14.) The licensing agreement leaves no room for Plaintiff to convert or transfer Sealy brand customers to PCFC's other product lines. (Dkt. No. 64 at 5.) To the extent that Sealy's collaboration with future licensees has interfered with PCFC's ability to effectuate such a breach of the agreement, any such expectancy is invalid, and any interference on the part of Sealy would not be improper. See Fred Seigel, 85 Ohio St. 3d 171, 176.

      Plaintiff's next argument, that Defendants have interfered with its expectancy associated with the goodwill of its current customer placements, also fails. (Dkt. No. 43 at 8.) Plaintiff argues that it has "worked diligently over the last 15 years to generate additional goodwill in customer relationships and placements from its business in Sealy-branded bedding products—efforts that have been very successful and that have created goodwill that belongs to PCFC, the licensee." (Id. at 9.) But the disruption of these relationships at the end of the term was inherent in the license agreement, which was never indefinite. (Dkt. No. 64 at 6.) The license agreement also conspicuously avoided discussing any interest that PCFC may have in customer goodwill, while repeatedly referencing PCFC's need to safeguard customer goodwill toward Sealy. (Dkt. No. 17 at 3-25.) Lastly, Plaintiff's goodwill argument fails because Plaintiff alleges only speculative damages. See Blank v. Snyder, 33 Ohio Misc. 67, 69 (Ohio Mun. Ct. 1972) ("No recovery can be had in cases where it is not certain that plaintiff suffered any damage."). In the

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS SECOND CAUSE OF ACTION- 7

absence of any information about possible damages, PCFC's allegations with respect to lost sales after the license term expires do not state a claim for tortious interference.

**Conclusion**

Because Plaintiff has failed to allege the existence of a valid business relationship with which Defendants have interfered, the Court DISMISSES Plaintiff's cause of action for intentional interference with business relations. Because Plaintiff's arguments fail based on the terms of the contract agreement alone, amendment would be futile, so dismissal is with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 1st day of February, 2013.

Marsha J. Pechman
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS SECOND CAUSE OF ACTION- 8